**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DONNA LIVESEY,<br>individually and on behalf of themselves and all other similarly situated persons, known and unknown,,<br><br>Plaintiff,<br><br>v.<br><br>EDGEWOOD CLINICAL SERVICES, P.C. d/b/a LIFESTANCE and LIFESTANCE HEALTH, INC.<br><br>Defendants. | Case No. 1:26-cv-5539<br><br>PLAINTIFF DEMANDS TRIAL BY JURY |

**CLASS AND COLLECTIVE ACTION COMPLAINT**

Plaintiff Donna Livesey, individually and on behalf of themselves and all other similarly situated persons, known and unknown ("Plaintiff"), by her attorneys, James M. Dore and Daniel I. Schlade, complains against Edgewood Clinical Services, P.C. d/b/a LifeStance ("Edgewood") and LifeStance Health, Inc. ("LifeStance"), and in support of this Class And Collective Action Complaint, states:

**Introduction and Parties**

1. This class action seeks redress for Defendants' willful violations of the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 203, *et. seq.* and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et. seq.*, for failure to pay minimum wages owed.

2. Plaintiff is a resident of Chicago, Illinois; and she is employed by Defendants pursuant to a written employment agreement.

3. Edgewood is an Illinois professional corporation that is authorized to conduct business in the state of Illinois.

4. Defendant LifeStance is a Delaware corporation, that is registered in the state of Illinois and authorized to conduct business in the state of Illinois.

**Jurisdiction and Venue**

5. The Court possesses subject matter jurisdiction over the FLSA claims pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331) and 28 U.S.C. §1337 because said claims raise a federal question; and supplemental jurisdiction over any related state law claim(s) pursuant to 28 U.S.C. § 1367.

6. Venue is proper in the Northern District of Illinois because all underlying facts and transactions of Plaintiff's claims occurred in Chicago, Cook County, Illinois; Plaintiff resides in Chicago, Cook County, Illinois; Defendants Edgewood conducts business in Chicago, Cook County, Illinois and it is an Illinois corporation; and LifeStance conducts business in Chicago, Cook County, Illinois.

**Defendants' Pay Structure**

7. LifeStance is a for-profit entity that owns and operates mental health clinics in thirty-three states in the U.S, and it provides a range of mental health services, including therapy, psychiatric services, and psychological testing. Edgewood is a subsidiary of LifeStance, and it operates mental health clinics throughout Illinois under the "LifeStance" brand. Collectively, LifeStance and Edgewood have over 10,000 employees and in excess of $500,000 in annual revenue. LifeStance and Edgewood may collectively be referred to as "Defendants"; and their employees, including Plaintiff, regularly handle goods or materials that have been moved in or

produced for commerce, including interstate commerce, which items include but are not limited to: pens, paper, computers, tablets, office supplies, and other tools of their trade(s).

8. Plaintiff is a Licensed Clinical Social Worker ("LCSW") that provides therapeutic services to patients, and she specializes in: anxiety, depression, PTSD and complex PTSD, health anxiety, sexual trauma, stress management, and substance use disorders. Plaintiff entered into a written employment agreement (the "Agreement") with Defendants in February 2025. A copy of the Agreement is attached as Exhibit A. Plaintiff began working for Defendants on or about March 27, 2023, and she has been employed by Defendants since said date on a full-time basis.

9. Pursuant to the Agreement, Plaintiff is employed by Defendants and the scope of her employment is limited to the following:

> Services including clinical, mental health, and other counseling, therapy, evaluation and medical management services within the scope of Provider's [i.e. Plaintiff's] license, as well as related services for which the company can bill.

*See* Exhibit A, Schedule A.

10. Pursuant to the Agreement, Plaintiff's wages paid by Defendants are a percentage function of the service that she provides to patients. Specifically, the Agreement provides that Plaintiff shall be compensated as follows:

> For appropriately authorized and verified medically necessary CPT codes rendered as a covered benefit by each applicable Payer, that have been appropriately charted and signed by Provider, the Provider will earn a gross fee equal to 56% (the "Percentage") of the relevant amount listed in the Company's Illinois Regional Compensation Schedule, as amended from time to time.
>
> Company shall pay Provider in accordance with the Company's regular payroll schedule, less required deductions for social security and Medicare tax withholdings, and income tax withholdings. Overpayments or underpayments to the clinician will be adjusted in subsequent pay periods as needed. In order to process payroll in a timely manner, compensation calculations may be estimated from

> time to time. When estimates are used adjustments will be made in the next payroll period.

*See* Exhibit A, Schedule A (hereinafter the "Percentage Wage"). Defendants have since increased Plaintiff's Percentage Wage from 56% to 60%.

11. Defendants do not pay Plaintiff a salary. Her compensation is a function of how many patients she sees during a particular pay period; and as a result, her take-home pay is a function of how many hours she works and how many patients she sees during a particular pay period.

12. Defendants do not pay Plaintiff any commissions. Plaintiff's wages are not dependent on making any sales to customers or patients for the benefit of Defendants. Rather, Defendants market their services nationally, typically through digital campaigns and the use of its own website. Defendants then funnel patients to therapists and other mental health providers, including Plaintiff. Plaintiff does not possess any responsibility under the Agreement to market the services of Defendants to the general public or preexisting patients; nor does Plaintiff engage in any marketing or sales activities on behalf of Defendants.

13. The Percentage Wage is the typical pay structure employed by Defendants to compensate hundreds, if not thousands, of mental health professionals employed by them in the State of Illinois and throughout the country.

**Defendants' Unpaid Training Sessions**

14. At least once per year, Defendants require their employees to attend mandatory annual compliance training sessions. The typical purpose of the training sessions is corporate compliance training, and it covers such topics as sexual harassment training; LifeStance safety policies; information technology ("I.T.") policies, and other corporate policies (the "Training Sessions").

15. Plaintiff has attended these Training Sessions at least once per year for the years 2024, 2025, and 2026. These training sessions are scheduled by Defendant for January of the respective year. Plaintiff and Defendants' other employees are required to attend the training sessions.

16. The Training Sessions are conducted by recorded video. Plaintiff and Defendants' other employees are typically required to watch the training videos in their office located at a LifeStance facility. During the video, Plaintiff and other employees were required to periodically click an onscreen button to verify their attendance and verify the fact that they were watching the video.

17. Plaintiff and Defendants' other employees were unable to perform other tasks or work while watching the Training Sessions videos.

18. Plaintiff and other of Defendants' employees are required to watch the Training Sessions videos during regular working hours for Defendants.

19. Attendance at the Training Sessions is mandatory and required by Defendants.

20. The substance of the Training Sessions is directly related to Plaintiff's job and the jobs of other of Defendants' employees in that the Training Sessions educate them on Defendants' mandatory corporate policies.

21. The average length of the training sessions is at least six hours per year.

22. Plaintiff and other similarly situated employees of Defendants do not receive any wages or other compensation for attending the training sessions.

**Defendants' Required Unpaid Work**

23. When Plaintiff began working for Defendants, administrative tasks required by patient visits were performed and handled by other LifeStance employees who, on information and belief, received an hourly wage.

24. Such administrative tasks included patient scheduling, fee disputes, completing worksheets requested by the insurance company, and other such tasks (the "Administrative Tasks").

25. During the last year, LifeStance has reassigned the Administrative Tasks from hourly workers to Plaintiff and other similarly situated LCSWs and clinicians employed by Defendants.

26. In or about April 2026, Plaintiff confronted Defendants' management regarding the reassignment of Administrative Tasks to LCSW's and clinicians such as her; and Plaintiff requested that Defendants assign such tasks to employees who would be paid for the work. In response, Defendant scheduled a meeting to discuss the reassigned Administrative Tasks. Defendants' management informed Plaintiff that her attendance at this meeting was mandatory, and that she would not receive any wages or compensation for attending the meeting.

27. Per Defendants' directive, Plaintiff attended a meeting with Defendants' management in April 2026 to discuss the reassignment of the Administrative Tasks to herself and other LCSWs. At this meeting, Defendants' management confirmed that: the Administrative Tasks had been reassigned to her, other similarly situated LCSWs and other clinicians; that Plaintiff, other similarly situated LCSWs and clinicians would not be receiving any pay or compensation for performing the Administrative Tasks because they could not afford to pay them

for such tasks; and that Plaintiff, other similarly situated LCSWs and clinicians should consider the performance of the Administrative Tasks as "pro bono" work.

28. The Administrative Tasks are outside the scope of work required by Plaintiff's Agreement and employment agreements between LifeStance and other similarly situated employees.

29. The Administrative Tasks are not related to Plaintiff's professional licensing or the substantive services she provides to clients. The Administrative Tasks do not require any special licensing or education.

30. On average, Plaintiff is spending in excess of 100 minutes per week attending to the Administrative Tasks. Other similarly situated employees of Defendants expend similar amounts of time attending to the Administrative Tasks.

31. The Administrative Tasks are mandatory and required by Defendants.

32. Plaintiff and other similarly situated employees of Defendants have not received any compensation from Defendants for performing the Administrative Tasks.

**Allegations Common To The FLSA And The IMWL**

33. At all relevant times, Plaintiff was Defendants' "employee" as that term is defined in the FLSA and the IMWL. Plaintiff and all proposed class and collective members entered into employment agreements with Defendants which specifically gives them the right to all the wages earned and/or owed under the FLSA and the IMWL.

34. Defendants are an "employer" as that term is defined in the FLSA, and the IMWL, because they are a privately-owned for-profit entity in the business of operating mental health clinics in Illinois and throughout the U.S. Edgewood is a subsidiary of LifeStance. Edgewood and LifeStance share a common corporate purpose; both Edgewood and LifeStance employ the

"LifeStance" brand name in marketing their service; both Edgewood and LifeStance share corporate officers, including but not limited to Ryan Pardo; and Lifestance and Edgewood do not make any distinction in marketing their services to patients and the general public. In addition, both LifeStance and Edgewood exercise control over Plaintiff's employment, including dictating tasks that she must attend to as well as mandating and requiring her attendance at the Training Sessions. Thus, Edgewood and LifeStance are a joint employer of Plaintiff and members of the proposed collectives and classes.

**FLSA Collective Action Allegations**

35. Plaintiff brings collective actions for herself and all others similarly situated employees of Defendants pursuant to 29 U.S.C. § 216(b) with respect to Counts I and III of this Complaint, in order to recover unpaid wages, liquidated damages and other damages related to Defendants' violation of the FLSA, including those similarly situated employees who worked for Defendants.

36. Plaintiff pursues the requested relief on behalf of the following proposed Collectives:

> ***Count I:***
>
> All individuals who currently work, or have formerly worked for Defendants going back three years before the filing date of this lawsuit, who were required to attend any of the Training Sessions without any compensation for attending the Training Sessions (the "Training Sessions Collective");
>
> And
>
> ***Count III:***
>
> All individuals who currently work, or have formerly worked for Defendants going back three years before the filing date of this lawsuit, who were required to perform any of the Administrative

Tasks without any compensation from Defendants (the "Administrative Tasks Collective").

37. Plaintiff is a member of both the Training Sessions Collective and the Administrative Tasks Collective that she seeks to represent, because she was required to attend the Training Sessions without compensation; and because she was required to perform the Administrative Tasks without compensation.

38. This action may be properly maintained as a collective action because Plaintiff and the members of the two collectives are similarly situated.

39. Plaintiff estimates that the two collectives, including both current and former employees over the relevant period, will include over 500 members each. The precise number of Collective Members should be readily available from Defendants' personnel, scheduling, time records, and from input received from the collective members as part of the notice and "opt-in" process provided by 29 U.S.C. § 216(b). Given the composition and size of the two collectives, their members may be informed of the pendency of this action directly via U.S. mail and/or via electronic mail.

40. Defendants' unlawful conduct has been widespread, repeated, and consistent.

## **Rule 23 Class Allegations**

41. Plaintiff brings Counts II and IV of this Complaint under the IMWL, as class actions pursuant to 735 ILCS 5/2-801, *et seq.* and Federal Rule of Civil Procedure 23.

42. Plaintiff will seek to certify, as a class action Counts II and IV alleged herein under the IMWL. Plaintiff will seek to certify the following two classes:

> ***Count II:***
>
> All individuals who currently work, or have formerly worked for Defendants going back three years before the filing date of this lawsuit, who were required to attend any of the Training Sessions without any compensation for attending the Training Sessions (the "Training Sessions Class");
>
> And
>
> ***Count III:***
>
> All individuals who currently work, or have formerly worked for Defendants going back three years before the filing date of this lawsuit, who were required to perform any of the Administrative Tasks without any compensation from Defendants (the "Administrative Tasks Class").

Plaintiff will ask this Honorable Court to determine the rights of the parties and to direct the Defendants to account for all hours worked, wages paid to all employees in the two classes, and wages not paid to all employees in the two classes.

43. Plaintiff brings Counts II and IV as a class action pursuant to FRCP 23 because:

A. The Class of current and former employees of Defendant that Plaintiff seeks to represent is so numerous and, on information and belief exceeds forty (40) individuals, that joinder of all class members is impracticable. While the precise number of Class Members has not been determined at this time, Defendant operates forty-one facilities in Illinois alone, and each facility employs multiple personnel. Accordingly, plaintiff believes that in excess of 40 similarly-situated employees exist for the limitations period related to the two counts. The Class would include both current and former employees of Defendants.

B. The class representative and the Class members have been similarly affected by Defendants' failure to pay proper hourly minimum wages, in violation of Illinois state law.

C. Furthermore, many Class members are likely still employed by Defendants, and they may be reluctant to raise individual claims for fear of retaliation.

D. There are questions of fact or law common to the two classes, which common questions predominate over any questions affecting only individual members, rendering a class action as superior to other available

methods for fairly and efficiently adjudicating the controversy. These common questions of law and fact include, without limitation, whether:

i. Defendant failed to pay Plaintiff and the Training Sessions Class any wages for time spent attending the Training Sessions; and

ii. Whether Defendant failed to pay the Administrative Tasks Class any wages for time spent attending to the Administrative Tasks.

E. Plaintiff, the class representative for both classes, suffered the same or similar injury as the class members arising out of the same conduct by Defendants, and the claims of the class representative are typical of the claims of the two classes, to wit: Defendants failed to pay Plaintiff any compensation for time spent attending the Training Sessions; and Defendants failed to pay Plaintiff any compensation for time spent attending to the Administrative Tasks.

F. The class representative is able to fairly and adequately represent and protect the interests of the two classes, because she is a member of both of the putative classes, and she has the same or similar injury as other members of the classes, to wit, the failure to receive any wages for attending the Training Sessions and performing the Administrative Tasks.

G. If individual actions were required to be brought by each member of the class injured or affected, the result would be a multiplicity of actions, creating a hardship to the class members, this Honorable Court, and Defendants. Accordingly, a class action is necessary for the fair and efficient adjudication of this lawsuit and distribution of the common fund to which the class is entitled.

H. The Defendants' books and records are material to Plaintiff's action because they may disclose certain information about the hours worked by each employee, the rate of pay for that work, and the deductions from the Plaintiff's and Class's paychecks.

I. Defendants violated the IMWL by refusing to compensate Plaintiff and the Class for all hours they worked for Defendants, including failing to pay them for attending the Training Sessions; and failing to pay them for attending to the Administrative Tasks.

Therefore, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit.

**Count I –Violation of the FLSA (The Training Sessions Collective)**

44. Plaintiff incorporates by reference Paragraphs 1-43, as if set forth in full herein for Paragraph 44.

45. Plaintiff has consented in writing to be a party to this action pursuant to 29 USC § 216(b).

46. Defendants are or were the employer of Plaintiff/the Training Sessions Collective.

47. Defendants willfully failed to pay Plaintiff and the Training Sessions Collective all wages for hours worked, by failing to pay Plaintiff and the Training Sessions Collective any wages whatsoever for the time spent attending the annual Training Sessions. On average, Plaintiff and members of the Training Sessions Collective spent six hours per year attending the Training Sessions.

48. Defendants' violations of the FLSA described herein have been willful and/or committed with reckless disregard as to whether their wage practices violated the FLSA. Defendants, as a large-scale business that operates in over thirty states with over 10,000 employees, possesses actual or constructive knowledge that it is required to pay its employees for hours spent attending mandatory corporate policy training sessions. Despite this knowledge, Defendants have failed to comply with the FLSA, and thus this failure to comply with the FLSA was either intentional or reckless.

49. Due to Defendants' FLSA violations, Plaintiffs and the Training Sessions Collective are entitled to recover from Defendants, jointly and severally, their unpaid wages and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including interest pursuant to the FLSA, specifically 29 USC § 216(b).

50. As a direct and proximate result of Defendants' actions, Plaintiff and the Class have suffered damages. For example, Plaintiff's estimated and approximate effective hourly wage rate while working for Defendants is approximately $27.00 per hour. This is because she typically makes approximately $49,000 per year, during which time she averages approximately 33-35 hours per week (i.e. $49,000/(52 weeks x 33-35 hours per week)). Accordingly, Plaintiff's unpaid wages are at least $162 (6 hours x $27/hour) per year during the applicable statute of limitations; and Plaintiff's damages are representative of the entire class.

**WHEREFORE**, Plaintiff individually and on behalf of herself and the proposed collective, known and unknown, respectfully prays for relief to the Court:

a. The designation of this action as a collective action on behalf of the proposed members of the FLSA representative action and prompt issue of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class apprising them of the pendency of this action and permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue;

b. An order requiring Defendants to file with the Court and provide to Plaintiffs' counsel a list of all names and current (or best known) home addresses and email addresses of all individuals who currently work or have worked for Defendants during the three years prior to the filing of this Complaint that attended Training Sessions without any compensation;

c. Authorizing Plaintiff's counsel to issue a notice informing collective members that this action has been filed, of the nature of the action, and of their right to opt-in to this lawsuit;

c. Finding that Defendants willfully violated the applicable wage provisions of the FLSA and by failing to pay all required wages to Plaintiff and Training Sessions Collective;

d. All damages available, including all unpaid wages, all liquidated damages, and payment of all reasonable attorney's fees, costs and expenses;

e. Granting judgment in favor of Plaintiffs and the Training Sessions Collective on their FLSA claims;

f. Awarding compensatory damages and liquidated damages to Plaintiffs and the Training Sessions Collective in an amount to be determined at trial;

g. Awarding pre-judgment and post-judgment interest to Plaintiffs and the Training Sessions Collective;

h. Awarding all costs and reasonable attorney's fees incurred prosecuting the claims;

i. Awarding reasonable incentive awards to the Named Plaintiffs to compensate them for the time and effort they have spent and will spend protecting the interest of the Training Sessions Collective, and the risks they are undertaking;

j. Awarding appropriate equitable and injunctive relief to remedy violations, including but not necessarily limited to an order enjoining Defendant from continuing its unlawful practices;

k. Awarding any further relief the Court deems just and proper; and

l. Granting leave to add additional case plaintiff(s) by motion, the filing of written consent forms, or any other method approved by the Court.

**Count II – Violation of the IMWL (The Training Sessions Class)**

51. Plaintiff reincorporates by Paragraphs 1-50, as if set forth in full herein for Paragraph 51.

52. The IMWL required Defendants to pay Plaintiff and the Training Sessions Class at least the applicable minimum wage for all hours spent attending the Training Sessions.

52. Defendants failed to pay any wages whatsoever to Plaintiff and the Training Sessions Class for hours spent attending the Training Sessions, and thus Defendants violated the IMWL.

54. As a direct and proximate result of Defendants' actions, Plaintiff and the Class have suffered damages. Plaintiff and the proposed class are entitled to recover all unpaid hourly wages, treble damages, 5% interest per month, and attorney's fees.

**WHEREFORE**, Plaintiff and the Training Sessions Class of other similarly situated persons respectfully request that the Court:

a. Determine that this action may be maintained as a class action pursuant to the IMWL and 735 ILCS 5/2-801 and FRCP 23;

b. Enter a judgment for all unpaid hours worked by Plaintiff and members of the Training Sessions Class for hours worked for the three years preceding the filing of this lawsuit;

c. Award Statutory damages for Plaintiff and the Training Sessions Class, including treble damages and 5% monthly interest, pursuant to the formula set forth in 820 ILCS § 105/12(a) and/or 815 ILCS §205/2;

d. Declare that Defendants have violated the IMWL;

e. Award reasonable attorneys' fees and costs as provided by the IMWL; and/or

f. Grant such additional or alternative relief as this Honorable Court deems just and proper.

**Count III –Violation of the FLSA (The Administrative Tasks Collective)**

55. Plaintiffs incorporate by reference Paragraphs 1-54, as if set forth in full herein for this Paragraph 55.

56. Plaintiff has consented in writing to be a party to this action pursuant to 29 USC § 216(b).

57. Defendants are or were the employer of Plaintiff/ the Administrative Tasks Collective.

58. Defendants willfully failed to pay Plaintiff and the Administrative Tasks Collective all wages for hours worked, by failing to pay Plaintiff and the Administrative Tasks Collective any wages whatsoever for the time spent attending to the Administrative Tasks. On average, Plaintiff and members of the Training Sessions Collective spent over 80 hours per year attending to the Administrative Tasks.

59. Defendants' violations of the FLSA described herein have been willful and/or committed with reckless disregard as to whether their wage practices violated the FLSA. Defendants, as a large-scale business that operates in over thirty states with over 10,000 employees, possesses actual or constructive knowledge that it is required to pay its employees for all hours worked. Despite this knowledge, Defendants have failed to comply with the FLSA, and thus this failure to comply with the FLSA was either intentional or reckless.

60. Due to Defendants' FLSA violations, Plaintiffs and the Administrative Tasks Collective are entitled to recover from Defendants, jointly and severally, their unpaid wages and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including interest pursuant to the FLSA, specifically 29 USC § 216(b).

61. As a direct and proximate result of Defendants' actions, Plaintiff and the Class have suffered damages. For example, Plaintiff's effective hourly wage rate while working for Defendants is approximately $27.00 per hour. Accordingly, Plaintiff's unpaid wages are at least $2,000 per year during the applicable statute of limitations; and Plaintiff's damages are representative of the entire class.

**Count IV – Violation of the IMWL (The Administrative Tasks Class)**

62. Plaintiff reincorporates by Paragraphs 1-61, as if set forth in full herein for Paragraph 62.

63. The IMWL required Defendants to pay Plaintiff and the Administrative Tasks Class at least the applicable minimum wage for all hours spent performing Administrative Tasks outside the scope of their respective employment agreements.

64. Defendants failed to pay any wages whatsoever to Plaintiff and the Administrative Tasks Class for hours spent attending to the Administrative Tasks, and thus Defendants violated the IMWL.

65. As a direct and proximate result of Defendants' actions, Plaintiff and the Administrative Tasks Class have suffered damages. Plaintiff and the proposed class are entitled to recover all unpaid hourly wages, treble damages, 5% interest per month, and attorney's fees.

**WHEREFORE**, Plaintiff and the Administrative Tasks Class of other similarly situated persons respectfully request that the Court:

a. Determine that this action may be maintained as a class action pursuant to the IMWL and 735 ILCS 5/2-801 and FRCP 23;

b. Enter a judgment for all unpaid hours worked by Plaintiff and members of the Administrative Tasks Class for hours worked for the three years preceding the filing of this lawsuit;

c. Award Statutory damages for Plaintiff and the Administrative Tasks Class, including treble damages and 5% monthly interest, pursuant to the formula set forth in 820 ILCS § 105/12(a) and/or 815 ILCS §205/2;

d. Declare that Defendants have violated the IMWL;

e. Award reasonable attorneys' fees and costs as provided by the IMWL; and/or

f. Grant such additional or alternative relief as this Honorable Court deems just and proper.

s/ Daniel I. Schlade
Attorney For Plaintiff
James M. Dore (ARDC No. 6296265)
Daniel I. Schlade (ARDC No. 6273008)
Attorney For Plaintiff
6232 N. Pulaski, #300
Chicago, IL 60646
773-415-4898
Email: james@dorelawoffices.com
danschlade@gmail.com

**Plaintiff and the Collective Class Members request trial by jury for all counts where allowed**

**CONSENT TO JOIN COLLECTIVE ACTION**
**Pursuant to Fair Labor Standards Act 29 U.S.C. § 216(b), and any other applicable statute where consent is necessary**

Name: **Donna Livesey**

1. I am over the age of eighteen and competent to give my consent in this matter.

2. I consent and agree to pursue my claims for wages that I allege are due to me for work I performed for which I allege the Defendant(s) are liable.

3. I understand that this lawsuit is brought under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, et seq., to recover alleged wages, overtime, and/or other benefits, including liquidated damages. I hereby consent, agree, and opt in to become a Plaintiff herein and be bound by any judgment by the Court or any settlement of this action.

4. I choose to be represented by class counsel Dore Law Offices LLC and Daniel Schlade for all purposes in this action and to take any steps necessary to pursue my claims, including filing new lawsuits.

5. I designate any named plaintiffs, to the fullest extent possible under applicable laws, as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting this litigation, compensation due my attorneys, and all other matters pertaining to this lawsuit.

6. I consent and agree to act as representative class representative for any other claims for which I allege the Defendant(s) are liable.

04 / 28 / 2026

**Date Signed**

**Signature**

**Donna Livesey**

**Printed Name**